# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 8, 2011 Session

## STATE OF TENNESSEE v. TIMOTHY LEON MCKENZIE

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-CR102956     Timothy Easter, Judge**

**No. M2010-01168-CCA-R3-CD - Filed January 11, 2012**

The defendant, Timothy Leon McKenzie, pled guilty to theft of more than $10,000 and forgery, receiving an agreed term of ten years probation in conjunction with a grant of judicial diversion.  Also included in the plea agreement was a condition that the defendant pay the victim of the crimes $157,900 in restitution at a rate of $1315 per month.  Thereafter, the defendant was found to be in violation of his probation based upon his failure to report to his probation officer and failure to pay restitution as ordered.  The trial court revoked the defendant's probation and sentenced him to an effective sentence of six years, which the court ordered to be served in confinement.  The court further reaffirmed restitution due in the amount of $156,000 and ordered that payment of such restitution be made a condition of the defendant's parole.  On appeal, the defendant asserts that: (1) the trial court erred by imposing a sentence of confinement; (2) the trial court lacked the authority to impose the special condition that ordered the defendant to make restitution when he was paroled; and (3) the court erred in imposing the full amount of restitution absent an inquiry into the defendant's ability to pay.  Following our review of the record, we conclude that the trial could did not err in ordering a sentence of confinement.  However, the court did lack the authority to impose payment of restitution as a condition of parole and did fail to appropriately determine the amount of restitution in consideration of the defendant's ability to pay.  As such, remand is necessary for a determination of the proper amount of restitution in this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Steven Garner, Franklin, Tennessee, for the appellant, Timothy Leon McKenzie.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Kim R. Helper, District Attorney General; and Jennifer C. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural History**

The charges against the defendant arose from his conduct of forging $157,900 worth of checks on the account of his wife's elderly grandmother, who lived with them. The defendant was indicted by a Williamson County grand jury on two of counts of forgery and one count of theft greater than $60,000. Pursuant to Tennessee Code Annotated section 40-35-313, the defendant pled guilty to one count of theft of more than $10,000 and one count of forgery on December 2, 2008. The agreed to a term of ten years probation in conjunction with the grant of diversion. Additionally, as part of the agreement, the defendant agreed to repay the victim $157,900 in restitution at a rate of $1315 per month.

Thereafter, on April 6, 2009, a probation violation warrant was issued alleging that the defendant had failed to provide proof of employment, moved without permission, failed to report to his probation officer, failed to report for a drug screen, owed probationary fees, and failed to make restitution. After multiple postponements, which involved transfer of the defendant's case from one probation officer to another, an amended violation warrant was issued in March 2010. That warrant alleged that the defendant had failed to report, failed to provide proof of employment, and failed to make restitution payments as ordered. On April 8, 2010, a revocation hearing was held before the court.

At the revocation hearing, the defendant's probation officer testified that he reviewed the procedure and conditions of the probationary sentence with the defendant, including that the defendant was required to report twice each month. The officer also testified that the defendant had failed to make the ordered restitution set by the court and, thereafter, had stopped attending the required meetings. The officer did acknowledge that the defendant was in compliance in all other regards. The State also called the victim to testify, and she stated that she had never received restitution from the defendant, except for one payment in the amount of $1000.

The defendant offered the testimony of his current employer, Ronald Stahr, who testified that the defendant was a very reliable employee, going "above and beyond" what was asked of him. He indicated that the defendant earned approximately $1500 per month and stated that he would personally be willing to withhold $500 of the defendant's wages and see that it was paid in restitution. Mr. Stahr further indicated that he would also personally

be willing to pay $5000 to the victim in a lump sum payment provided the defendant was returned to his probationary status. He testified that the defendant was paid by the job, so depending on the number and size of the jobs, his income could vary month to month. Mr. Stahr also stated that the defendant had been contracted to work for him for approximately two years.

After hearing the testimony presented, the court found that the defendant had violated the terms of his judicial diversion by failing to report to his probation officer since January 2010, and by failing to make restitution payments to the victim as ordered. The court ordered that the defendant's diversionary status be revoked and set a sentencing hearing for May 2010.

At the sentencing hearing, the State again presented the testimony of the probation officer and the victim, which had been offered at the violation hearing. In addition to reiterating that she had only received $1000 in restitution, the victim added that she would like to see the defendant serve his sentence in confinement. The State additionally called Detective Tameka Sanders, who indicated that she conducted the investigation into these crimes. She testified that she found that the defendant took checks belonging to the victim in an amount of $157,900 and deposited them into his account.

The defendant also recalled Mr. Stahr, who testified as he had at the revocation hearing and reiterated his offer to personally pay the victim $5000 in immediate restitution. Additionally, the defendant himself made an allocution to the court. He offered an apology to the victim for his taking of the money and acknowledged that he was aware that she needed that money for her expenses. The defendant indicated that he intended to repay the victim.

After hearing this evidence, the trial court proceeded to sentencing. The court found multiple enhancing factors, including that the victim was particularly vulnerable due to her age and that the defendant has failed to comply with the conditions of probation and had abused a position of private trust. The trial court specifically noted that it found the defendant's testimony at the hearing "unbelievable." The court then sentenced the defendant to a six-year sentence for the theft and to a two-year sentence for the forgery. It further ordered that the sentences be served concurrently and in confinement. The court continued and imposed restitution in the amount of $156,000. It also ordered that as a condition of any future parole, the defendant was to satisfy the restitution amount and stated that we "will see what [the Board of Paroles and Probation] do with it." The defendant has timely appealed the sentencing decisions of the trial court.

**Analysis**

On appeal, the defendant has raised three challenges to the sentences imposed by the trial court. First, he contends that the trial court abused its discretion by ordering the defendant to serve his sentence in confinement. Second, he contends that the trial court was without the authority to impose the special condition of restitution upon any future parole which he might receive. Finally, he asserts that the trial court erred by imposing restitution in the amount of $156,000 without conducting an inquiry into his ability to pay.

## I. Sentence of Confinement

First, the defendant contends that the trial court erred by imposing a sentence of confinement rather than an alternative sentence. When reviewing sentencing issues, the appellate court shall conduct a *de novo* review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d) (2010). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id*. at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). The defendant bears "the burden of showing that the sentence is improper." *Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Under the revised Tennessee sentencing scheme, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347 (citing T.C.A. § 40-35-102(6)). Instead, a defendant not within "the parameters of subdivision (5) [of Tennessee Code Annotated section 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id*. Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. T.C.A. § 40-35-102(6) (emphasis added).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. T.C.A. § 40-35-303(a) (2010). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. *Id*. at 303(b); *see also State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995)

(quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. *Bingham*, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. *Id.* Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *Goode*, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997); *Bingham*, 910 S.W.2d at 456.

A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations which establishes "evidence to the contrary" to rebut a defendant's status as a "favorable candidate" for alternative sentencing:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1). In choosing among possible sentencing alternatives, the trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also Dowdy*, 894 S.W.2d at 305-06.

After determining the appropriate length of the sentences, *i.e.*, six years and two years to be served concurrently as a Range I offender, the trial court made the following findings with regard to the manner of service of the defendant's sentence:

Turning now to the question of manner of service of this sentence, as [I have] already indicated - - well, let me go over the purposes and sentencing considerations that [I am] required to look at.

He is, under Subsection 6 of 40-35-102, to be considered as a favorable candidate for alternative sentencing, having been convicted of a C and an E

felony, and while that is something that the Court is to consider, and I will consider it, if there is evidence to the contrary, then he shall not be considered a favorable candidate for alternative sentencing.

Probation is something that he is not entitled to. Probation is a [largesse] of the Court for someone who has demonstrated a willingness to be able to comply with the terms and conditions of probation. So just because this statute says [it is] something that [he is] to be considered an appropriate candidate for, does not mean that he automatically gets it.

Under 40-3[5]-103, the Court does find that measures less restrictive than confinement have frequently or recently been applied unsuccessfully to this defendant, he has been unable for a period now of several months - - actually, years - - to meet the terms and conditions of a sentence that involves release into the community, [he has] failed miserably on the attempt that - - to make restitution.

And while I understand, . . . your argument about the downturn in the economy and his inability to make it, the appropriate thing would have been - - the responsible thing for somebody that was serious about probation would have been to come back into court and say I need to modify it; I just [cannot] do this. But no, he waits until [he is] just woefully behind and woefully in violation of probation, and then runs and [does not] report. Somebody like [that is] not entitled to any type of alternative sentencing.

The Court finds, again, that this was not an isolated incident, this was something that was a well thought-out scheme against a loved one who was particularly vulnerable. The defendant is, in the Court's view, not trustworthy, and someone who is not trustworthy is someone [who is] not entitled to the largess of probation.

I believe the sentence that the Court is going to impose; that is, to serve this sentence, is the least severe measure necessary to achieve the purposes of the sentence in this case.

And this gets back to the nature and the characteristics of the conduct involved in this case. [The defendant's] conduct in this case is despicable and, frankly, lower than low. Although no one was physically hurt, his conduct is just despicable.

He is also not worthy of probation. He has demonstrated to the Court a lack of potential for rehabilitation or treatment. He was given that chance; he blew it. His statement today is too little too late and given no weight by the Court.

This, the Court believes, is a just sentence where justice would be served; that he be ordered to serve the entire sentence of six years. And that is the order of the Court.

The defendant's argument on appeal that the trial court erred in denying him an alternative sentence seems to be based on his assertions that: (1) he was a first-time offender and that he complied with "most" of the rules of his diversionary probation; (2) the primary reason for finding him in violation was his failure to make restitution, which he claims the evidence establishes he was not able to pay; (3) the "well-thought out plan" of taking the money could have been discovered by the victim at any time, thereby reducing the amount of damages; and (4) the statements that the defendant was "lower than the low" and "despicable" were not proper considerations in making this determination. He contends that the provisions of the Sentencing Act were not given due consideration by the court and that the State "failed to produce evidence which would require the court to deny the defendant of some sort of probation or alternative sentencing."

Initially, we note that the defendant is not offering a challenge to the court's finding that he did, in fact, violate the terms of probation; thus, he does not challenge the revocation itself. We see nothing in the record before us fails which establishes that the court abused its discretion in reaching its determination that the defendant violated the terms and conditions of his probation by failing to report and by failing to make restitution. *See State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (revocation of probation is subject to an abuse of discretion standard of review). While the record is somewhat less than clear whether the court made the appropriate determination that the defendant's failure to pay restitution was willful, as is required, we note that the failure to report, alone, is sufficient to support the decision to revoke. As this has not been challenged by the defendant, no further review by this court is necessarily mandated.

Additionally, while we agree that the defendant was entitled to be considered as a favorable candidate for an alternative sentence, we see nothing in this record that causes us to conclude that the trial court's denial of such was in error. The defendant's arguments to the contrary are simply not meritorious.

It is apparent that the trial court based its denial on both the need to avoid depreciating the seriousness of the offenses and the defendant's failure to comply with the terms of his

diversionary probation. In order to deny an alternative sentence upon the ground that confinement is necessary to avoid depreciating the seriousness of the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring probation." *See State v. Bottoms*, 87 S.W.3d 95, 103 (Tenn. Crim. App. 2001). While the trial court did not make this specific finding, the comments made show that it found the circumstances to be reprehensible and offensive.

We cannot give credence to the defendant's misplaced attempt to contradict the trial court's findings that this was a four-year, well thought-out plan based upon the defendant's contention that the victim could have discovered and stopped the crime sooner. Nothing in our jurisprudence negates the seriousness of a defendant's crime simply because the victim should or could have exercised more care and averted part of the damage. Additionally, the defendant's assertion that the trial court relied upon improper facts based upon the court's comments that the defendant was "lower than the low" and "despicable" does not entitle him to relief. First, we note that the trial court made those statements in reference to the defendant's conduct, not about the defendant himself. The statements, taken in context, simply refer to the court's conclusion that the crime committed against a particularly vulnerable victim was reprehensible.

Nothing in the record before us contradicts that conclusion. The defendant carried out a four-year crime against an elderly relative. He acknowledged that he was aware that she needed that money, which she had saved for years, in order to survive. Nonetheless, he persisted in continually taking that security from her, leaving her destitute at ninety years of age.

Likewise, we must also reject the defendant's challenges to the denial of alternative sentencing based upon his remaining two assertions, which relate to the trial court's finding that he had recently violated terms of a probationary sentence. Again, we note at this juncture that the defendant is not contesting the court's finding that he failed to comply with the terms of release for his diversionary probation. Rather, we take from his argument that he is only challenging the weight given to that fact by the trial court. His arguments, that he was a first time offender, that he complied with "most" of the conditions of probation, was employed, and had been unable to make restitution, are not arguments against the finding that he had recently violated his probationary status. Instead, he appears only to want this court to reweigh those facts and excuses and conclude that they merit his being given a second chance.

That is not the function of this court. From our review of the record, we must

conclude that the trial court properly considered all the required principles of sentencing and weighed the evidence placed before it. Based upon that evidence, we cannot agree with the defendant that he carried his burden of establishing his entitlement to probation or an alternative sentence. As previously stated, the record establishes that he committed a continuing crime against his wife's ninety-year-old grandmother, depriving her of money which she needed. Likewise, it shows that he entered a plea agreement and agreed to the conditions of probation, which were set forth and included the duty to report and to pay restitution. It is uncontested that the defendant did neither of those things.

As noted by the trial court, if the defendant could not meet his required restitution, the responsible thing would have been to request a modification rather than simply disappearing. The fact that the defendant did not do so does not speak highly of his chances at rehabilitation or of future compliance if given probation again. Based upon these facts, we conclude that no error occurred in the imposition of the sentence of confinement. No relief is, therefore, warranted.

## II. Condition of Parole

In his second issue, the defendant contends that the trial court lacked the authority to order him to serve a six-year sentence with the special condition that he be ordered to make full restitution when, and if, he was paroled. The State concedes, and we agree, that the trial court is without authority to impose this condition with regard to parole. In imposing the six-year effective sentence, the trial court stated on the record:

> With the special condition that as a condition of parole, when he meets the parole board, as he surely will, and [they will] probably give him . . . parole since this is not a crime of violence, . . . this Court is specifically ordering that a condition of that release be that he make restitution in the amount of $156,000 to [the victim] as a condition of his parole; [that is] the order of this Court. [Let us] see what they do with it.

The trial court was without authority to impose this condition of parole. Clearly, a trial court is not authorized to set conditions for parole, as the Board of Probation and Parole has exclusive authority in this regard. *See State v. Debbie Dawn Wales*, No. M2007-01231-CCA-R3-CD (Tenn. Crim. App. at Nashville, Dec. 11, 2008). The Board of Probation and Parole bears the responsibility in imposing conditions of parole, and it also regulates the proceedings. Trial courts have no power in this regard, and any attempt to impose such conditions upon a defendant or other branches of our government is not a valid use of judicial power.

## III. Restitution Amount

Finally, the defendant contends that the trial court improperly reimposed the $156,000 of restitution following the revocation of his diversionary status without considering the defendant's ability to pay such an amount. When a defendant challenges restitution ordered by the trial court, this court reviews that determination utilizing a *de novo* standard of review with a presumption that the trial court's ruling was correct. T.C.A. § 40-35-401(d); *State v. Johnson*, 968 S.W.2d 883, 884 (Tenn. Crim. App. 1997).

We note that the defendant is not contesting that restitution was required to be ordered in this case in some amount; rather, he is contesting only the amount which was ordered based upon his ability to pay. We agree that restitution is mandated in all theft cases. Tennessee Code Annotated section 40-20-116 specifically states that "[w]henever a felon is convicted of stealing or feloniously taking or receiving property, the jury shall ascertain the value of the property, if not previously restored to the owner, and the court shall, thereupon, order the restitution of the property. . . ." Additionally, we note that, in some circumstances, restitution may be ordered in conjunction with a custodial sentence. *See State v. William Chandler Daniels*, No. E2009-02172-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Dec. 23, 2010). However, our law further provides that all restitution orders must be determined via the procedure in Tennessee Code Annotated section 40-35-304, even in instances where restitution is mandated under section 40-20-116(a). *Id.* (citations omitted).

Our courts have held that there is no set formula for awarding restitution. *Johnson*, 968 S.W.2d at 886. The sum of the restitution ordered must be reasonable and does not have to equal the precise pecuniary loss of the victim. *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). The procedure set out in the statute requires, among other things, that the court specify the "amount and time of payment," which "may" include "payments or performance in installments." T.C.A. §40-35-304(c). Additionally, and most relevant to this case, the statute requires that the court, in setting the proper amount of restitution, "consider the financial resources and future ability of the defendant to pay or perform." *Id.* at (d). This requirement is necessary because "[a]n order of restitution which obviously cannot be fulfilled serves no purpose for the [defendant] or the victim." *Johnson*, 968 S.W.2d at 885. To the extent that the restitution amount dictated by section 304 differs from that dictated by section 116, section 304 "contemplates the court establishing the deficiency amount" that "is subject to collection by execution as in the case of a judgment." *William Chandler Daniels*, No. E2009-02172-CCA-R3-CD.

The State contends that the defendant is bound by the initial determination of restitution in this case because it was part of his original bargained-for plea agreement and that testimony at the sentencing hearing established the balance that remained unpaid. The

State's argument is that any inquiry into the defendant's ability to pay should have taken place prior to acceptance of the plea. The State further argues that because the defendant has failed to include transcripts of that hearing, we are bound by the trial court's initial determination. *See State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991) (in absence of an adequate appellate record, the reviewing court must presume the trial court ruled correctly). In so far as to what occurred at that hearing, we are in agreement with the State. The trial court made remarks on the record that it felt certain it had conducted the required inquiry into the defendant's ability to pay prior to accepting the plea. In the absence of evidence to the contrary, we must accept that did, in fact, occur and that restitution was properly ascertained based upon the defendant's then present ability to pay.

However, we disagree with the State that the defendant remains bound by the initial determination by the trial court. The circumstances of the defendant had clearly been altered at the time of the revocation and re-sentencing. The court heard evidence that the defendant made approximately $1500 per month as a janitor prior to the revocation hearing. However, after the sentencing hearing, the defendant was ordered to serve his entire sentence in incarceration, which plainly precluded any employment on his part. Our law requires that a trial court shall specify the time period for satisfaction of the payment of restitution; however, that period may not extend beyond the expiration of the sentence. T.C.A. §40-35-304(c), (g)(2). It is simply not reasonable that the court could conclude that the defendant could pay $156,000 in restitution while serving his six-year sentence, as the evidence established that he had no other assets at the time of sentencing. It is clear that the court, by its previously determined erroneous attempt to impose the restitution payment as a condition of parole, was attempting to impose upon the defendant the burden of paying restitution if he was paroled and released from custody. As we have previously noted, this is not proper.

When imposing restitution, a court must look at the defendant's ability to pay at the time he is sentenced, and the failure to do so is error. Again, we appreciate the fact that the victim's pecuniary loss in this case is $156,000;[1] however, imposing that amount in restitution may not practical in light of the facts and circumstances of this case. The case must be remanded to the trial court for consideration of the defendant's present ability to pay in light of his present situation. After making that determination, the trial court should amend the amount of restitution to reflect those considerations. We note that if the defendant is paroled and returns to work at that point, the victim or her estate may pursue collection of any remaining loss through the civil courts. While this system may not be perfect and the victim's losses may never be entirely recovered, it is simply not the function of the sentencing court to make such determination at the present time.

---

[1] Actually, it appears that the trial court miscalculated that figure, as evidence established a total loss of $157,900 of which $1000 was paid to the victim, thereby leaving the pecuniary loss at $156,900.

**CONCLUSION**

Based upon the foregoing, the case is remanded for reconsideration of the imposed amount of restitution and for removal of the condition of parole imposed by the trial court. The sentences before this court are affirmed in all other respects.

_____
JOHN EVERETT WILLIAMS, JUDGE